IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. WILSON, | : | |
| Plaintiff, | : | No.: 3:15-cv-01813 |
| | : | |
| v. | : (Judge Caputo) | |
| | : (Magistrate Judge Saporito) | |
| AVERTEST, et al. | : | |
| | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

This *in forma pauperis* action was initiated by the filing of a *pro se* complaint on September 17, 2015, by the plaintiff, John D. Wilson, against the defendants, Avertest, a Virginia corporation, and its employees, Ethan Doe and Shane Doe. (Doc. 1). The complaint consists of alleged violations of the First and Fourth Amendments to the United States Constitution arising out of an incident which occurred on July 14, 2015, while Wilson was under supervision by the Daily Reporting Center ("DRC") of the York County Department of Probation Services (the "probation office"). The essence of Wilson's complaint is that, as a member of the Jewish religion, his First and Fourth Amendment rights were violated when employees of Avertest, the contracted testing agency for the probation office, allegedly

strip searched him as he was asked to provide a random sample of his urine.[1]

Before the court is a motion to dismiss (Doc. 13) filed by the defendants seeking to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion has been fully briefed and is now ripe for disposition. For the reasons set forth below we will recommend that the motion be granted.

I.    Background

The first count of the complaint alleges that on July 14, 2015, in York, Pennsylvania, defendant Shane asked Wilson to "drop his pants, lift up his testicles, turn, bend over and spread his buttocks" stating that this was defendant Avertest's policy and any refusal to comply would result in a positive reading for alcohol. (Doc. 1 ¶5).  Wilson further alleged that he

_____

[1] In the complaint, Wilson made no reference to his court-ordered supervision by the probation office, nor his participation in the DRC. The defendants' motion to dismiss contained these facts as did the public record contained in publicly available state court records. See generally Commonwealth v. Wilson, Docket No. CP-67-CR-0004642-2014 (York County C.C.P.).  These state court materials are public records of which this court may properly take judicial notice in ruling on a motion to dismiss. See Fed. R. Evid. 201; Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Pennsylvania v. Brown, 373 F.2d 771, 778 (3d Cir. 1967).

refused to comply with Shane's requests stating that Shane was performing an illegal search of Wilson's person. (Id. 1 ¶¶5,6). Wilson further averred that defendants Shane and Ethan continued to request that Wilson comply with Avertest's policies. (Id. ¶8). Based upon these allegations, Wilson contends that his Fourth Amendment rights were violated.

In the second count of the complaint, Wilson maintains that he was born Jewish and that he has a right not to be humiliated by exposing himself outside of his Judaic beliefs. (Id. ¶13). Further, Wilson claims that he is exempt from unnecessary searches unless Avertest can show that denying the exemption was necessary to serve a compelling interest. (Id. ¶14). Based upon those facts, Wilson claims that his First Amendment rights were violated.

The defendants move to dismiss the complaint on the basis that neither the First Amendment nor the Fourth Amendment protects against the conduct alleged because the defendant Avertest is a private corporation and defendants Shane and Ethan are Avertest's employees. Alternatively, the defendants contend that the complaint must be dismissed because the terms and conditions of Wilson's probation/parole

required his submission to drug and alcohol urinalysis screenings at Avertest's facility in York, Pennsylvania. (Doc. 13).

II.    Legal Standards

    A.    12(b)(6) Motion to Dismiss

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6).  "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule12(b)(6), the defendant has the burden of showing that no claim has been stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d

1406, 1409 (3d Cir. 1991); <u>Johnsrud v. Carter</u>, 620 F.2d 29, 32-33 (3d Cir. 1980); <u>Holocheck v. Luzerne Cty. Head Start, Inc.</u>, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005).  In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Tellab, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002).

III.   <u>Discussion</u>

Based on the publicly available state court records referenced above, on May 14, 2015, following a jury trial in the Court of Common Pleas of York County, Pennsylvania, Wilson was convicted of driving under the influence (second offense), reckless driving, and driving at safe speed.  On

5

June 29, 2015, Wilson was sentenced to five years in the county intermediate punishment program, including six month of house arrest with alcohol monitoring and participation in the Day Recruiting Center Program ("DRC").[2] Attached to the defendants' brief in support of their motion to dismiss is the DRC's document which sets forth its drug testing procedures, and which was signed by Wilson agreeing to be bound by its terms. (Doc. 14-1). In the document which contained drug testing procedures, Wilson was informed that, as a participant of the DRC, he was required to submit to random drug and alcohol screens through Avertest. (Id.). Wilson was further informed that he would be subject to random urine and breath testing at any time and his failure or refusal to comply would be considered a positive test result. (Id. at 2). In addition, he was informed that he was subject to a random search of his person, vehicle, and/or place of residence by a staff member of the DRC or the probation office. (Id.).

---

[2] Wilson's intermediate punishment program sentence was ultimately revoked, and he was sentenced to serve 90 days to five years in prison. He has since been released on parole.

In his complaint, Wilson complains that on July 14, 2015, his rights were violated when he was directed to remove his pants, and subject himself to an inspection of his spread buttocks. (Doc. 16-1). In his brief, Wilson concedes that he was court ordered to submit to random urinalysis testing. (Id.). He cites the relevant portion of the defendants' brief regarding the procedure utilized by Avertest as follows:

> Defendant Avertest's urinalysis screening procedure requires direct observation by a collector of the same gender. Specifically, male clients are asked to loosen their belts, unzip their pants, and shed any clothing that may obstruct collector's view.

(Doc. 14, at 1).

Although Wilson does not specifically characterize this as an action under 42 U.S.C. §1983, we liberally construe his *pro se* complaint as such a federal civil rights action. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. City of Oklahoma v. Tuttle, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

The defendants make a preliminary contention that, as private entities, they were not acting under color of state law, and therefore could not violate Wilson's constitutional rights. A private party will be deemed a state actor if there is "a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." Campbell v. PMI Food Equip. Grp., Inc., 509 F.3d 776, 784 (6th Cir. 2007), or the private party's action is "entwined with governmental policies." Brentwood Acad. v. Tenn. Secondary Sch., 531 U.S. 288, 296 (2001). Although Wilson's complaint

does not specifically allege that Avertest acted as the agent for the probation office, the documents attached to the defendants' motion and brief in support thereof clearly show that Avertest was the probation office's "contracted provider." (Doc. 14-1, at 1). Thus, the relationship between the probation office and Avertest in conducting the tests as the probation office's provider established that Avertest acted under color of state law.

A.   Fourth Amendment Claim

We construe Wilson's contention that on July 14, 2015, and other unlisted dates, he was asked "to drop his pants, lift up his testicles, turn, bend over and spread his buttocks" to sound under the Fourth Amendment. The Fourth Amendment protects the "rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is settled law that the collection and analysis of a urine sample to test for drug use constitutes a search that is subject to the constraints of the Constitution's Fourth Amendment. Kerns v. Chalfont - New Britain Twp. Joint Sewage Auth., 263 F.3d 61, 65 (3d Cir. 2001).

"The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." United States v. Sczubelek, 402 F.3d 175, 182 (3d Cir. 2005). Whether a search is reasonable under the general Fourth Amendment totality of the circumstances approach "is determined by assessing, on the one hand, the degree to which it intrudes upon an individuals privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Samson v. California, 547 U.S. 843, 848, (2006); see United States v. Williams, 417 F.3d 373, 378 (3d Cir.2005). Based upon the publicly available court records, at the time of the allegedly wrongful conduct, Wilson was under an intermediate punishment program sentence, subject to strict supervision similar to, but greater than, that imposed upon parolees and probationers. See generally, 42 Pa. Cons. Stat. Ann. §9804; Commonwealth v. Wegley, 829 A.2d 1148, 1152-53 (Pa. 2003) (discussing intermediate punishment program sentencing, a "sentencing option. . . between probation and incarceration"). Parolees have "severely diminished expectations of privacy by virtue of their status alone" because they consent to restrictive parole conditions such as reporting requirements, travel limitations, and drug testing in exchange for early

10

release from prison. <u>Samson</u>, 547 U.S. at 852. By contrast, a state's "overwhelming interest" in supervising parolees to reduce recidivism "warrant[s] private intrusions that would otherwise not be tolerated under the Fourth Amendment." <u>Id.</u> at 853.

The Supreme Court has observed that "[t]o a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special restrictions.'" <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 874 (1987) (quoting <u>Morrissey v. Brewster</u>, 408 U.S. 471, 480 (1972)).

As our sister court, the United States District Court for the Eastern District of Pennsylvania, recently observed: "Neither the Supreme Court nor the Third Circuit Court of Appeals has addressed the question of when a probation officer can conduct a suspicionless search of a probationer and, if so, whether the probation officer may conduct such a suspicionless search in the absence of probation conditions expressly authorizing that search." <u>Collura v. Ford</u>, Civil Action No. 13-4066, 2016 WL 409 228, at *20 (E.D. Pa. Feb. 3, 2016). A probationer's Fourth Amendment rights are not violated by urine testing   employed by a probation officer to

determine whether the probationer has used drugs in violation of probation conditions, See United States v. Duff, 831 F.2d 176 (9th Cir. 1987), see also Hadden v. Jacobs, Civil Action No. 90-0759, 1990 WL 26677 at *1, Civil Action No. 90-0759, (E.D. Pa. Mar. 12, 1990) (requiring parolee to submit to urinalysis as condition of parole is not a violation of the Fourth Amendment); cf. Portillo v. U.S. District Ct. for Dist. of Ariz., 15 F.3d 819, 823-24(1994).

In the instant case, Wilson was convicted of driving under the influence and was sentenced to a county intermediate punishment program. His sentence contained the condition that he participate in the DRC, which included random urine testing and searches of his person. Wilson agreed, in writing, to abide by those conditions. (Doc. 14-1, at 2). Here, Wilson alleged that he was subjected to a strip search. The reasonableness of a strip search or visual cavity search is assessed by considering the totality of the circumstances, including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." See Bell v.

Wolfish, 441 U.S. 520, 559 (1979)(holding that prison officials may conduct visual body cavity searches in a reasonable manner).

We reiterate that Wilson, having been sentenced to an intermediate punishment program, had diminished privacy rights by virtue of his prior consent to warrantless personal searches by Avertest's employees or members of the probation office. As to the justification for initiating the strip search, based upon the state of the record, the complaint is devoid of reasons why the strip search was not in furtherance of the DRC's stated policies.

As to the manner in which the strip search was conducted, the complaint lacks any specificity describing the nature of the search, where it was conducted, who was present, whether Wilson was touched in the process, and whether it was obtrusive. See Richmond v. City of Brooklyn Ctr., 490 F.3d 1002,1008 (8th Cir. 2007) (law requires that officers of the same sex conduct strip search "in an area as removed from public view as possible without compromising legitimate security concerns"); Polk v. Montgomery Cty., Md., 782 F.2d 1196, 1201–02 (4th Cir.1986) ("Whether the strip search was conducted in private is especially relevant in

determining whether a strip search is reasonable under the circumstances.").

Therefore, based upon this analysis, we do not find a violation of the Fourth Amendment, and we will recommend that the defendants' motion to dismiss be granted as to Wilson's Fourth Amendment claim.

B.    First Amendment Claim

In the second count of the complaint, Wilson charges that his First Amendment free exercise rights were violated. He claims to be of the Jewish faith and "has a right not to bare his nakedness for any unnecessary reason." (Doc. 16-1, at 3). In support of his claim, he cites, Hadden. In Hadden, the United States District Court for the Eastern District of Pennsylvania held that parolees do not have a right to privacy against urine testing and the court dismissed the action.[3]

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . ." U.S. Const. amend I.

_____

[3] In Hadden, the plaintiffs did not make a claim that the testing of their urine violated their First Amendment rights.

Wilson fails to cite any legal authority that the urinalysis in question violates First Amendment rights. The case law on this topic generally falls into a category of cases occurring in prison settings. For example, in <u>Hill v. Blum</u>, 916 F. Supp 470 (E. D. Pa. 1996), a state prison guard's pat-down search of a Muslim inmate, which purportedly included brief touching of the inmate's genitals, did not violate his First Amendment rights. In <u>Small v. Wetzel</u>, 528 Fed. App'x 202 (3d Cir. 2013), prison inmates brought a §1983 civil rights action after they were strip-searched in the presence of female prison staff claiming it to be violations of their First, Fourth, and Fourteenth Amendment rights. The Third Circuit held that the strip search did not violate the inmates' right to be free from unreasonable searches and seizures. The court also noted that the plaintiffs did not seek appellate review of their First Amendment claims which the District Court dismissed.

Thus, based upon the foregoing, we do not find that Wilson alleged a violation of the First Amendment, and we will recommend that the defendant's motion to dismiss be granted as to Wilson's First Amendment claim.

C. <u>Leave To Amend</u>

The  Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). In this case, it is not clear that amendment would be futile, nor is there any basis to believe it would be inequitable. It is therefore recommended that Wilson be granted leave to file an amended complaint within a specified time period following dismissal of the complaint.

IV. <u>Recommendation</u>

Based upon the foregoing, it is RECOMMENDED that the defendants' motion to dismiss (Doc. 13) be GRANTED. It is FURTHER RECOMMENDED that the plaintiff, John D. Wilson, be granted leave to file an amended complaint within a specified time.

**<u>*s/ Joseph F. Saporito, Jr.*</u>**
**JOSEPH F. SAPORITO, JR.**
**U.S. Magistrate Judge**

**Dated: September 7, 2016**

16

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN D. WILSON,                      :
                 Plaintiff,       :        No.: 3:15-cv-01813
                              :
               v.              : (Judge Caputo)
                            : (Magistrate Judge Saporito)
AVERTEST, et al.                     :
                              :
               Defendants.      :

NOTICE IS HEREBY GIVEN that the undersigned has entered

the foregoing Report and Recommendation dated September 7, 2016**.**

Any party may obtain a review of the Report and

Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a
> motion or matter described in 28 U.S.C. § 636 (b)(1)(B)
> or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy
> thereof.  Such party shall file with the clerk of court,
> and serve on the magistrate judge and all parties,
> written objections which shall specifically identify the
> portions of the proposed findings, recommendations or
> report to which objection is made and the basis for
> such objections.  The briefing requirements set forth
> in Local Rule 72.2 shall apply.  A judge shall make a
> *de novo* determination of those portions of the report
> or specified proposed findings or recommendations to

17

which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Failure to file timely objections to the foregoing Report and

Recommendation may constitute wavier of any appellate rights.


*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge


Dated: September 7, 2016